IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Andrea T. Clutter,                          :
                    Plaintiff              :        Civil Action 2:08-cv-01183

        v.                                  :        Judge Frost

Michael J. Astrue,                          :        Magistrate Judge Abel
Commissioner of Social Security,
                    Defendant               :

**REPORT AND RECOMMENDATION**

Plaintiff  Andrea T. Clutter brings this action under 42 U.S.C. §§405(g) for review

of a final decision of the Commissioner of Social Security denying her application for

Disability Insurance benefits.  This matter is before the  Magistrate Judge for a report

and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.**  Plaintiff Andrea T. Clutter maintains she became disabled

at age 33 by psychological disorders and related physical tremors. She has no severe

physical impairments. The administrative law judge found that Clutter suffers from an

affective disorder and a related anxiety disorder. But he found that she retained the

ability to perform jobs that involve no more than superficial contact with supervisors,

co-workers, and the general public.

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- The administrative law judge's residual functional capacity finding was that
  Clutter could have no more than superficial contact with supervisors, co-

workers, and the general public, but none of his hypothetical questions to the vocational expert included all of these limitations;

- The administrative law judge cited much greater number of jobs that plaintiff could perform than the vocational expert testified to;
- The administrative law judge erred by failing to consider all the psychiatric limitations found by Dr. Rodney Swearingen, who performed a disability examination for the Commissioner;
- The administrative law judge failed to properly consider limitations various examining psychologists and psychiatrists found Clutter had in relating to others, performing job tasks, following instructions, concentrating on job tasks, and withstanding the normal stress and pressures of work.

**Procedural History.** Plaintiff Andrea T. Clutter filed her application for disability insurance benefits on April 14, 2004, alleging that she became disabled on February 12, 2004, at age 33, by psychological disorders and related physical tremors. (R. 50.) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On March 22, 2007, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 206.) A vocational expert also testified. On April 12, 2007, the administrative law judge issued a decision finding that Clutter was not disabled within the meaning of the Act. (R. 26.) On October 15, 2008, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 5-8.)

**Age, Education, and Work Experience.** Andrea T. Clutter was born March 20, 1970. (R. 50.) She completed the tenth grade. (R. 88.) She has worked as a customer service manager and shift manager in restaurants, a manager of a gas station, and a scale operator. She last worked February 2004. (R. 59.)

**Plaintiff's Testimony.** Clutter testified that when she was around other people she became very anxious and began to twitch. She was treated by a psychiatrist for her anxiety and stress and was prescribed five different medications. The medications provided her with some relief, but not that much. She reported having auditory hallucinations that included voices telling her to kill herself or other people saying that they are going to kill her. She saw her psychiatrist every three weeks. She had not been counseling since her therapist took another job elsewhere.

Clutter did not believe that she was capable of working even in a non-public setting. She had been unsuccessful finding a job where she did not have to deal with anyone else. Even if she were have a job cleaning offices at night after everyone had left, she would have a hard time leaving her house. She did not go out shopping, although she did go bowling if she was accompanied by her husband. She dropped out of the bowling league the year before because it became too much for her.

Clutter testified that she began experiencing problems with her mental health in 2001. She was working at the time, and she began having difficulty at work. She did not have any current hobbies or interests, although in the past she used to enjoy softball and bowling. She did do cross-stitch at home.

(R. 210-20.)

**Medical Evidence of Record.**

The Ohio State University Medical Center. On April 19, 2001, Clutter was admitted to the psychiatric unit of the Ohio State University Medical Center with

complaints of spasmodic contraction of her neck to the left, which increased with stress. She reported experiencing a gross tremor on her right leg for the past several months. The tremors were attributed to marital difficulties and were exacerbated when Clutter had contact with her husband.

On discharge, Clutter was diagnosed with conversion disorder with motor symptoms and assigned a current Global Assessment of Functioning ("GAF") score of 43. Clutter was referred to outpatient psychiatric care. (R. 98-99.)

Wilmer K. Furuta, M.D. On January 15, 2003, Dr. Furuta, plaintiff's treating psychiatrist, diagnosed bipolar disorder. (R. 110.) Clutter reported racing thoughts and only sleeping from 3:00 am to 6:00 a.m. On mental status, she was alert and oriented in three spheres. She had good recent and remote memory. Her affect was blunted, and her mood was moderately depressed. (R. 110-11.)

On April 4, 2004, Dr. Furuta indicated that plaintiff was having a lot of anxiety and panic attacks. She had fewer ticks. (R. 109.)  On May 6, 2004, Dr. Furuta noted that Clutter did not experience ticks until she went out among a lot of people. (R. 108.)

Dublin Counseling Center. On April 29, 2004, a counselor at Dublin Counseling Center completed a daily activities questionnaire at the request of the Rehabilitation Services Commission's Bureau of Disability Determination. (R. 103-04.) Clutter lived with her husband and children. She was very dependent on her husband. Clutter had difficulty being around groups of people. Clutter was disciplined at work as a result of multiple unexcused absences from work due to her mental health problems. Poor

attendance, high anxiety, panic attacks, difficulty being around groups of people and short term memory problems were identified as barriers to plaintiff working. Clutter was able to prepare food and perform household chores, as well as care for her personal hygiene.

Alan G. Resor, M.D. On June 16, 2004, Dr. Resor, a psychiatrist, performed an initial evaluation and began treating plaintiff. Plaintiff reported a history of depression beginning around age 16. Two and a half years ago, her family doctor prescribed her Zoloft, but she reported that triggered a manic episode. She also reported frequent panic attacks lasting 10-15 minutes at a time and occurring every two to three days. She had a tick in her neck every few seconds, which had reached the point of being disabling because she was too embarrassed to leave her house.

Clutter said that she was constantly manic, but Dr. Resor did not observe any indication of mania. She reported only sleeping four hours a night, having racing thoughts, and going on spending sprees. Her mood was described as a dysphoric mania, although at times she was happy. She had a right leg tremor due to nervousness. She reported some recent auditory hallucinations. Dr. Resor diagnosed an atypical bipolar disorder. (R. 130-31.)

Sherri L. Ten Pas, D.O. On August 12, 2004, Dr. Ten Pas, a neurologist, evaluated plaintiff at the request of Dr. Risor to determine the cause of the twitching affecting her neck and lower right extremity. Clutter reported that the twitching began about three years ago when everything became just "too much" for her. The twitching became

worse with anxiety and when she went out in public. Dr. Ten Pas concluded that the movements resulted from Clutter's underlying bipolar and anxiety disorder. She did not find an evidence on examination of any focal or lateralizing neurologic deficits. (R. 126-28.)

T. Rodney Swearingen, Ph.D.  On June 16, 2004, Dr. Swearingen performed a psychological evaluation at the request of the Bureau of Disability Determination to assess the presence and nature of any psychological disability. (R. 119-25.) Dr. Swearingen diagnosed panic disorder with agoraphobia and bipolar 1 disorder with recent episode mixed. He assigned a GAF score of 53. Dr. Swearingen summarized his findings as follows:

> Ms. Clutter is a 34 year old female who resides with her husband and children. Ms. Clutter shakes and twitches. There is very noticeable twitching in her neck, causing her whole head to move during this evaluation. Ms. Clutter suffers from panic disorder with agoraphobia, as evidenced by her shaking, sweating, chest pain, shortness of breath, having a fear of losing control, having a fear of dying, and having to leave situations because her panic gets so bad. Ms. Clutter also suffers from bipolar 1 disorder, most recent episode mixed, as evidenced by her depressed mood, problems sleeping, crying, feeling hopeless, helpless, worthless, and guilty, poor energy level, constant racing thoughts, grandiose thoughts, mood changes, being distracted very easily, and pressured speech. Ms. Clutter's functional and symptomatic GAFs are both 53 because she has evidenced moderate symptoms.

(R. 124.)  With respect to work-related mental abilities, Dr. Swearingen concluded:

> 1. The claimant's ability to relate to others, including fellow workers and supervisors, family friends, and neighbors is moderately to severely impaired. Her severe panic makes it difficult for her to be around others. She has contact with only one neighbor and she only has a couple of friends.

2.     The claimant's mental ability to remember and follow instructions is moderately impaired. She forgets things easily.

3.     The claimant's mental ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks is moderately impaired. She has problems with concentration and she loses focus. She forgets what she is doing while she is in the process of doing it. Her pace of task is slow.

4.     The claimant's mental ability to withstand stress and pressures associated with day-to-day work activity is moderately to severely impaired. Her anxiety and panic would likely make withstanding stress and pressures at work difficult.

5.     As a consequence of the above and Ms. Clutter reported experience with money and bills, her ability to manage funds is moderately impaired. She reported that she has problems managing money. She also has symptoms of mania.

(R. 124-25.)

Kristen E. Haskins, Psy.D On July 27, 2004, Dr. Haskins, a psychologist, reviewed the medical record for the Commissioner and completed a psychiatric review technique form. (R. 132-47.) Caroline T. Lewin, Ph.D., reviewed the evidence in the file and Dr. Haskins' assessment and concurred with her findings. (R. 132.)

Dr. Haskins noted diagnoses of bipolar 1 disorder, most recent episode mixed and panic disorder with agoraphobia. (R. 135, 137.) She concluded that plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace and no repeated episodes of decompensation. (R. 142.)

With respect to understanding and memory, Clutter was moderately limited in her ability to remember locations and work-like procedures and to understand and remember very short and simple instructions. She was markedly limited in her abilities to understand and remember detailed instructions. With respect to sustained concentration and persistence, Clutter was moderately limited in her abilities to carry out very short and simple instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She was markedly limited in her ability to carry out detailed instructions.

With respect to social interaction, Clutter was moderately limited in her abilities to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. With respect to adaptation, she was moderately limited in her ability to respond appropriately to changes in the work setting and to travel in unfamiliar places or use public transportation. (R. 145-46.)

Dr. Haskins found Clutter's allegations of a panic disorder and bipolar disorder credible, and she also gave weight to the treating source based on the longstanding

history with her. Because of her twitching and nervousness, Clutter would do best in an environment that required minimal interaction with others. Dr. Haskins opined that Clutter could remember and follow one- to two-step instructions and that she could perform work that was routine and predictable in nature. (R. 147.)

Ohio Behavioral Health. On November 9, 2004, Clutter was admitted to Riverside Hospital. (R. 151-72.) At admission, Clutter was actively suicidal with a plan to harm herself by overdosing. She reported that she had been manic for the past ten months, but when she took cough medicine she "crashed." She had been housebound and unable to engage in most daily activities. She experienced extreme agitation followed by extreme tearfulness. She had auditory hallucinations consisting mostly of banging noises and hammering. (R. 153.)

On discharge, she was diagnosed with a mood disorder, not otherwise specified and bulimia nervosa, purging type. On mental status examination, Clutter appeared older than her stated age. She was oriented in all spheres. Her affect was mildly restricted, and her mood was euthymic. Her psychomotor activity was characterized by normal movements and activity level. She was able to attend and maintain focus. (R. 154.)

Amy Murker, M.D. In April 29, 2005, Dr. Murker first saw Clutter for psychiatric care. (R. 178.) Clutter gave Dr. Murker disability forms and a letter from her attorney. (R. 178.) Following that initial examination, Dr. Murker completed a Medical Assessment of Ability to do Work-Related Activities (Mental) form. (R. 175-77.) Dr.

Murker opined that Clutter had a fair ability to follow work rules, use judgment, and function independently. She had a poor ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, maintain attention and concentration, and persist at a work-like task. Dr. Murker noted that plaintiff's auditory hallucinations, depression, poor concentration, and disorganized thinking interfered with her functioning. (R. 175.)

Clutter had a fair ability to understand, remember, and carry out simple and detailed, but not complex, job instructions. She had a poor ability to carry out complex job instructions. She had a good ability to maintain personal appearance and a fair ability to relate predictably in social situations. She had a poor ability to behave in an emotionally stable manner and to demonstrate reliability. Dr. Murker noted that it was hard for Clutter to be around a lot of people because of her anxiety and mood swings. (R. 176.)

An April 29, 2004 progress note indicated that plaintiff was only sleeping two to three hours a night and that she continued to have auditory hallucinations. (R. 178.) There are no further treatment notes from Dr. Murker in the record.

Steven R. Schneir, M.D.  On September 16, 2005, Dr. Schneir, a psychiatrist, began treating Clutter. Clutter reported auditory hallucinations that worsened when she went to public places. On mental status examination, plaintiff had poor recent memory. Her mood was anxious, and her affect was inappropriate. With respect to

motor activity, she rocked and picked at her head. She had normal attention and thought processes, but her insight and judgment were poor.

Dr. Schneir diagnosed borderline personality disorder and gave Clutter a rule out diagnosis of bipolar disorder. He assigned her a GAF of 40. (R. 185-87.)

On October 10, 2005, Dr. Schneir noted that plaintiff was not sleeping well and continued to experience anxiety and auditory hallucinations. He considered whether plaintiff's diagnosis might be schizoaffective disorder rather than bipolar disorder. (R. 188.)

On May 3, 2006, plaintiff returned to Dr. Schneir and reported that she was off all of her medications. She was oriented in three spheres. Her affect was constricted. She was anxious, tearful and continued to experience auditory hallucinations. Dr. Schneir noted that plaintiff had not been compliant with her treatment. (R. 195.)

On June 10, 2006, Clutter indicated that the tic in her neck was related to anxiety. (R. 194.) She reported that the medications had helped her mood, although they did not reduce her agitation. Dr. Schneir observed that she continued to bounce her leg. *Id.* On June 28, 2006, Dr. Schneir noted that she continued to hear voices. *Id.*

On August 14, 2006, plaintiff remained somewhat depressed. She continued to experience auditory hallucinations, although the voices were "not as bad." (R. 196.)

On September 12, 2006, Clutter indicated that she was not as depressed, but she did not want to do very much. The medication had lessened her auditory hallucinations, but they were still present. (R. 196.)

On October 10, 2006, Clutter remained somewhat depressed. She had some increased apathy. On November 7, 2006 she reported anxiety, tightness in her chest, and claustrophobia, making it difficult for her to breath. (R. 193.)

**<u>Administrative Law Judge's Findings.</u>**

1. The claimant last meets the insured status requirements of the Social Security Act on June 30, 2009.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date of disability of February 12, 2004 through the date of this decision (20 CFR 4004.1520(b) and 404.1571 *et seq.*)

3. The claimant has the following severe impairments: an affective disorder and an anxiety-related disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or a combination of impairments that meets, or medically equals any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has no physical/exertional limitations and the mental residual functional capacity for no more than superficial contact with supervisors, co-workers, and the general public.

6. The claimant is not able to perform her past relevant work (20 CFR 404.1565).

7. The claimant was born on March 20, 1970 and was 33-years old on the alleged onset date of disability, which is defined as a younger individual, "18-43" (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled to skilled work with no evidence of transferable skills (20 CFR 404.1568).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

(R. 22-25.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge's hypothetical questions to the vocational expert were incomplete and failed to contain all of the functional limitations contained in the administrative law judge's findings, making it impossible to determine the vocational ramifications of plaintiff's residual functional capacity. The administrative law judge concluded that plaintiff could have no more than superficial contact with supervisors, co-workers, and the general public, and the hypothetical questions posed to the vocational expert only included a limitation on dealing with the general public.

- The administrative law judge cited job numbers that significantly differed from those by the vocational expert. Even if the administrative law judge's hypothetical questions contained all the identified limitations, the administrative law judge misquoted the number of jobs that plaintiff could perform identified by the vocational expert. The vocational expert testified that there were 1,200-1,500 janitorial jobs that plaintiff could in the Columbus region. (R. 225-29.) But the administrative law judge found that there was "12,00 [sic] to 1,500" janitorial jobs, 5,000 to 6,000 laundry worker jobs, and 8,000 to 10,000 stock clerk jobs that Clutter could perform. The job numbers cited by the administrative law judge are in significant conflict with those provided by the vocational expert and the administrative law judge appears to have translated the number of available local jobs into figures commensurate with national jobs. Plaintiff argues that the administrative law judge does not

have the expertise to make this calculation, and his findings in this regard are merely speculation.

- <u>The administrative law judge failed to properly consider all of the evidence by failing to mention specific vocational limitations identified by a consultative examiner</u>. Plaintiff argues that the administrative law judge failed to consider her vocational limitations that were identified by Dr. Swearingen.  Plaintiff maintains that this is problematic based on the vocational expert's testimony that an individual's ability to attend, concentrate and persist on work-related tasks is particularly important in the realm of unskilled work.

- <u>The administrative law judge failed to properly consider the combined impact of her vocational limitations.</u> The administrative law judge presented the various vocational limitations identified by Clutter's treating psychiatrist, Dr. Murker, in isolation to the vocational expert rather than formulating a hypothetical question that encompassed the combined limitations.  Plaintiff further argues that the administrative law judge erred in disregarding Dr. Murker's opinion. Clutter maintains that the treatment notes support the vocational limitations identified by Dr. Murker.

**<u>Analysis.</u>**

<u>Accuracy of Hypothetical Given Vocational Expert: Legal Standard</u>.  Plaintiff argues that the Administrative Law Judge's hypothetical to the vocational expert was not supported by substantial evidence because the administrative law judge concluded

15

that plaintiff could have no more than superficial contact with supervisors, co-workers, and the general public, and the hypothetical questions posed to the vocational expert only included a limitation on dealing with the general public.

In determining whether a claimant is disabled, an administrative law judge makes a residual functional capacity determination. That finding is an "assessment of the claimant's remaining capacity for work" once his or her limitations have been taken into account. 20 C.F.R. § 416.945. It is "a more complete assessment of her physical and mental state and should include an 'accurate[ ] portray[al] [of her] individual physical and mental impairment[s].' *Varley,* 820 F.2d at 779; *Myers v. Weinberger,* 514 F.2d 293, 294 (6th Cir.1975) (per curiam)." *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002).

When a vocational expert testifies, the administrative law judge asks the expert to assume certain facts about the claimant's work abilities. The facts in this hypothetical are the administrative law judge's residual functional capacity findings. The administrative law judge must accurately state each limitation that affects the claimant's ability to work. If there is not substantial evidence supporting the limitations the administrative law judge includes in the hypothetical to the vocational expert, then the expert's testimony is not substantial evidence supporting the Commissioner's decision denying benefits. *Howard,* 276 F.3d at 240-42. If a limitation that substantially affects the claimant's ability to work is established by uncontroverted medical evidence, it is

error for the administrative law judge to omit this limitation from the hypothetical given the administrative law judge. 276 F.3d at 242.

Accuracy of Hypothetical Given Vocational Expert: Discussion. The administrative law judge ultimately determined that plaintiff retained the residual functional capacity for work that had no more than superficial contact with supervisors, co-workers, and the general public. (R. 23.) During the hearing, the administrative law judge posed the following question to the vocational expert: "Suppose we have a hypothetical individual with no exertional limitations, but limited to no more than superficial contact with the general public. Would that hypothetical individual be able to return to her past relevant work?" (R. 225.) The administrative law judge followed that question with the following hypothetical: "Say the same individual could have no contact with the public. Had no exertional limitations. Would that hypothetical individual be able to return to any of the past relevant work?" *Id*.

The administrative law judge questioned Clutter about whether she thought she could perform a job as a laundry worker that did not involve any contact with the general public. Clutter was doubtful that she could perform the job "[b]ecause the fact of having to be around any people." (R. 227.) Clutter did not believe she could be around any people without have extreme anxiety.

The administrative law judge asked the vocational expert, "Suppose the same individual could have no contact with anybody on a [INAUDIBLE]. Would that knock out those jobs [INAUDIBLE]?" (R. 230.) The vocational expert responded that there

were some janitorial positions that involved working alone at night, but if all levels of communication were eliminated the person would not be able to perform sustained work. For example, the person would have to be able to undergo the hiring process. In response to another question, the vocational expert testified that all jobs would be eliminated if she was unable to talk superficially with supervisors and co-workers and absent from work more than twice a month due to an inability to leave the home. (R. 231-32.)

The vocational expert testified that:

> there are also janitorial positions. Many can be performed at night. Some are also performed during the day. There's no interaction with the public. It's an unskilled entry-level type of position. And again there's minimal interaction. And one is usually around, they're isolated with few, if any, people working around them. The number of those types of positions range anywhere from 12 to 1,500 within the region.

(R. 230.) Later in the hearing, the administrative law judge asked the vocational expert:

> Q.  . . . Let's define it in a little more easy terms. Ability to, poor means ability to function in this area is seriously limited and not precluded. If the person can interact with supervisors at least superficially then that wouldn't eliminate any of the jobs is correct?
> A.  Yes. That's correct.

(R. 232.) If, however, a person could not interact with supervisors at least superficially, then all jobs would be eliminated. *Id.*

Given the vocational expert's description of these positions, there was substantial evidence to support the administrative law judge's decision denying benefits because

there were a significant number of jobs in the region that the plaintiff could perform based on her residual functional capacity.

Plaintiff also argues that even if the administrative law judge's hypothetical questions contained all the identified limitations, the administrative law judge misquoted the numbers provided by the vocational expert. With respect to the janitorial positions, Clutter maintains that the administrative law judge presumed the number of positions was 1,200 to 1,500 even though the vocational expert *actually* testified that the range was from *12* to 1,500. This argument is without merit. It is wholly inconceivable to presume that only 12 janitorial positions exist in the Columbus, Ohio region. This is the result of how the testimony was transcribed, and cannot be a realistic characterization of the vocational expert's testimony. The testimony is accurately read as 1,200 to 1,500 janitorial jobs.

Failure to Consider All Medical Evidence. Plaintiff argues that the administrative law judge failed to consider her vocational limitations that were identified by Dr. Swearingen, which is problematic based on the vocational expert's testimony that an individual's ability to attend, concentrate and persist on work-related tasks is particularly important in the realm of unskilled work.

The administrative law judge summarized Dr. Swearingen's report:

> Disability Determination Services performed a Psychological Evaluation on the claimant on May 16, 2004; who reported that she was having symptoms of bi-polar/depression, panic attacks, twitching in her hands, neck, whole head, and legs. She stated that her symptoms worsened or exacerbated when she becomes nervous or agitated. She

avoids crowds or places where there are a lot of people. The claimant also reported that emotionally, she felt that she was on a roller coaster. She sleeps poorly, has trouble falling asleep, and has crying spells for no apparent reason. When she is depressed, she tries to stay to herself, but has no suicidal or homicidal ideations. She has grandiose thoughts, mood changes, constantly racing thoughts, and is easily distracted. She also feels hopeless, helpless, worthless and guilty. She has a poor energy level that keeps her from completing tasks. However, the claimant continued to report that there are times that she feels that her mood is normal. She enjoys drawing and being with her children (Exhibit 5F at 1 through 4).

Mental status examination of the claimant showed that she was well organized with well organized associations and spoke in a direct manner. There was no evidence of any flight of ideas, poverty of speech or persevere thinking. She maintained good eye contact. Her affect was reactive, and she had fairly satisfactory comprehension, but reported problems handling money matters. The examiner reported that the claimant suffers from a bi-polar disorder, most recent episode mixed, as evidenced by her depressive mood, problems sleeping, crying, and feeling hopeless and worthless. The claimant was noted to have twitching in her neck that caused her whole head to move. She was diagnosed to have a panic disorder with agoraphobia; a bipolar disorder, most recent episode mixed; and a Global Assessment function score of 53, which placed her in the moderate range of mental functioning (Exhibit 5F at 5 and 6).

(R. 23-24.) The administrative law judge did not discuss Dr. Swearingen's findings concerning her ability to perform work-related tasks.

When discussing whether plaintiff met or equaled Listings 12.04 and 12.06, the administrative law judge made several factual errors. He indicated that the record indicates that Clutter had "moderate depression, recurrent, and without psychiatric (sic) features." (R. 24.) The evidence of record demonstrates, however, that plaintiff had depression *with* psychotic features. Virtually all of plaintiff's treatment providers noted that she experienced auditory hallucinations. With respect to the B criteria for Listings 12.04 and 12.06, the administrative law judge stated that she had no limitations in

maintaining concentration, persistence and pace and that she had been hospitalized once because of her mental impairment. *Id*.

Dr. Swearingen concluded that Clutter's mental ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks is moderately impaired. She also had problems with concentration and she lost focus. (R. 124-25.) Dr. Haskins, a reviewing psychologist, concluded that Clutter had moderate difficulties in maintaining concentration, persistence, or pace. (R. 142.) With respect to sustained concentration and persistence, Clutter was moderately limited in her abilities to carry out very short and simple instructions. (R. 145.) Dr. Murker also opined that plaintiff's abilities to maintain attention and concentration, and persist at a work-like task were poor. (R. 175.) The evidence also demonstrates that plaintiff was hospitalized twice for psychiatric reasons.

Because there is not substantial evidence in the record supporting the administrative law judge's determination that Clutter had no limitations in maintaining concentration, persistence and pace, I RECOMMEND that this case be REMANDED for consideration of the evidence cited above as well as the work-related limitations identified by Dr. Swearingen.

<u>Combined Impact of Plaintiff's Mental Limitations</u>. Plaintiff argues that the administrative law judge erred when he did not permit her counsel to present the vocational limitations identified by Dr. Murker in combination to the vocational expert.

Instead, the administrative law judge believed that the vocational limitations should be presented one at a time:

> That's not an acceptable question. What you're going to do is throw everything in and say if they got work. He can't make that determination. That's not an acceptable. I want each one, each function, by function, so each question. If you've got a poor ability to relate to all work that means that seriously limited, but not precluded. Would that eliminate any of the jobs that you gave us, Mr. Rosenthal?

(R. 232.) The administrative law judge maintained that because the vocational limitations identified by Dr. Murker did not preclude any specific work function, the vocational expert did not have the expertise to determine whether the combined impact of her limitations would preclude all work.

In the alternative, the administrative law judge concluded that Dr. Murker's opinion as to plaintiff's vocational abilities was not entitled to any deference:

> I note that Ms. Clutter's treating counselor or psychiatrist completed an Assessment which indicated poor abilities in many areas, which is defined as "seriously limited but not precluded" in the assessment (Exhibit 9F/3-4). I do not read this assessment as precluding the type of work I have set out in my RFC, but if it may be read as so preclusive of such work, I do not accept it. The treatment notes, to the extent that they can be read, appear to disclose a relatively stable mini mental status, with orientation intact, no suicidal ideation, or risk factors noted, and improving mood (Exhibit 12F/4-14, 11F, 10F). To the extent therefore, that the claimant's treater's opinion could be construed as more limiting that than the RFC given in this decision, I find that the treater's opinion is inconsistent with the record as a whole, including the treater's own treatment notes.

(R. 25.) Despite the testimony of the vocational expert that the combined psychological limitations identified by Dr. Murker would preclude all work based on their cumulative effect over time, the administrative law judge was not obligated to adopt Dr. Murker's

conclusions. Dr. Murker made those findings on her first session with plaintiff; and she did not have a longstanding treatment relationship when she completed her assessment. Consequently, there is substantial evidence in the record for the administrative law judge's decision to not give significant weight to Dr. Muker's assessment or the vocational expert's testimony that the cumulative effect of all her vocational limitations would preclude all work.

From a review of the record as a whole, it is **RECOMMENDED** that this case be **REMANDED** for consideration of the evidence concerning plaintiff's abilities to maintain attention, concentration, or pace and the work-related limitations identified by Dr. Swearingen.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

       s/Mark R.  Abel_____
United States Magistrate Judge